# In the United States Court of Federal Claims

No. 16-81C (BID PROTEST)
(Filed Under Seal: November 23, 2016 | Reissued: January 3, 2017)[*]

| | |
|---|---|
| STRATEGIC BUSINESS SOLUTIONS, INC., <br><br> Plaintiff, <br><br> v. <br><br> THE UNITED STATES OF AMERICA, <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) | Keywords: Bid Protest; Solicitation Requirements; Redaction; Negotiated Procurement; Non-Conforming Proposal; Minor Informality or Irregularity. |

*Christopher E. Brown*, The Brown Firm PLLC, Alexandria, VA, for Plaintiff.

*Devin A. Wolak*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, DC, with whom were *Douglas K. Mickle*, Assistant Director, *Robert E. Kirschman, Jr.*, Director, and *Benjamin C. Mizer*, Principal Deputy Assistant Attorney General, for Defendant. *Lt. Col. Gregory J. Fike*, Assistant General Counsel, Defense Intelligence Agency, Of Counsel.

**OPINION AND ORDER**

**KAPLAN, Judge.**

In this post-proposal, pre-evaluation bid protest, Plaintiff Strategic Business Solutions, Inc. (SBSI) challenges the Defense Intelligence Agency's (DIA) decision to exclude its proposal from consideration for a contract award. DIA's decision was based on SBSI's failure to comply with the solicitation's requirement that it provide redacted copies of its proposal that would conceal its identity and the identity of any of its proposed subcontractors.

Each party has moved for judgment on the administrative record. As discussed below, the Court concludes that SBSI's proposal did not conform to the solicitation and that the agency did not abuse its discretion when it excluded SBSI's proposal from

---

[*] This Opinion was originally issued under seal, and the parties were given the opportunity to request redactions. Neither party requested redactions, and the Opnion is now being reissued in full.

consideration. Accordingly, the government's motion for judgment on the administrative record is **GRANTED**, and SBSI's cross-motion is **DENIED**.

## BACKGROUND

### I.   The Solicitation

On August 22, 2014, DIA issued solicitation number HHM402-14-R-0005. Administrative Record (AR) Tab 4a at 410. The solicitation was a request for proposals (RFP) seeking contractors to provide "financial management and related services" to "assist the Agency['s] efforts to establish internal controls and demonstrate and sustain audit readiness by the end of FY 2016." Id. at 410–12, 433. The contract vehicle was titled "Solutions for Intelligence Financial Management," or "SIFM II."[1] Id. at 412. The contract would be a "Multiple Award – Indefinite Delivery Indefinite Quantity (IDIQ) Contract" with minimum orders of $2,500 and a five-year contract ceiling of approximately $75,000,000. Id.

The RFP directed prospective offerors to submit their proposals in three volumes: (1) Security Plan and Technical/Management; (2) Past Performance; and (3) Price. Id. at 518. It also included a table with instructions regarding how many copies of each volume the offeror should submit and what form those copies should take. Id. at 519. In particular, those instructions provided that offerors were to provide for each of the first two volumes one written, non-redacted copy; one electronic, non-redacted copy; and seven written, redacted copies. Id.

In a provision derived from the FAR, the RFP informed offerors that the government "intend[ed] to make a single or multiple award(s) . . . to the responsible offeror(s) whose offer(s), conforming to the solicitation, will be the best value to the Government." Id. at 532 (quotation omitted); see also FAR 52.212-2(a) ("The Government will award a contract resulting from this solicitation to the responsible offeror whose offer conforming to the solicitation will be most advantageous to the Government, price and other factors considered."). Further, the government "reserve[d] the right to award this effort based on the initial proposal, as received, without discussion." AR Tab 4a at 522; see also id. at 514 ("The Government intends to evaluate offers and award a contract without discussions with offerors." (quoting FAR 52.212-1(g))); FAR 15.306(a)(3) ("Award may be made without discussions if the solicitation states that the Government intends to evaluate proposals and make award without discussions."). Finally, the RFP included a provision derived from FAR 52.212-1(g) stating that the government "may reject any or all offers if such action is in the public interest; accept other than the lowest offer; and waive informalities and minor irregularities in offers received." AR Tab 4a at 513–14.

---

[1] A predecessor contract vehicle, titled "SIFM I," ran from 2008 to 2014. See Transfer Compl. ¶¶ 12–13, ECF No. 10.

On September 18, 2014, DIA issued Amendment 04 to the RFP. Id. Tab 4i at 601. The amendment included a list of questions from prospective offerors and the government's answers to those questions. Id. at 691–732. Question 22 noted that the solicitation "d[id] not provide any guidance on what is meant by 'Redacted'" and asked the government to:

> [P]lease address whether or not the following information is required to be redacted:
> - Prime Offeror company name
> - Subcontractors company name(s)
> - Prime Offeror individual personnel name(s)
> - Subcontractor individual personnel name(s)
> - Prime Offeror's proposed Key Personnel name(s)
> - Information identifying the Prime Offeror or any proposed subcontractors' [sic] status as a current incumbent on the SIFM I contract vehicle.

Id. at 695. The government responded that "[a]ll bulleted info shall be redacted and no additional information needs to be redacted." Id.

## II.   SBSI's Proposal and DIA's Decision to Exclude the Proposal from Consideration

SBSI submitted its proposal on October 6, 2014. Id. Tab 5a at 733. In a cover letter, SBSI expressly took "no exceptions" to the solicitation and acknowledged all of the RFP's amendments, including Amendment 04. Id. SBSI's proposal, however, did not fully comply with the RFP's redaction requirements. Specifically, in more than 100 places throughout the proposal, SBSI failed to redact its name, the names of its subcontractors, and the names of several of its proposed personnel (including the names of some of its proposed key personnel). See id. Tab 6b at 1011 (contracting officer's summary of failures to redact).

The agency received seventeen proposals. Id. Tab 2 at 17. The contracting officer (CO) then convened a source selection evaluation board (SSEB) and provided its members with the redacted volumes received from each offeror. See id. On November 18, 2015, the SSEB's chair emailed the CO to explain that "there might be an issue with [SBSI's] [p]roposal in that it is not fully redacted." Id. Tab 6a at 1007. The chair observed that "[t]his would directly impact my level of confidence in [SBSI] if they can't get the redaction right." Id.

On November 25, 2014, the CO notified SBSI by letter that he had excluded SBSI's proposal from further consideration. Id. Tab 6b at 1010. In the letter, the CO excerpted the portion of Amendment 04 that explained the redaction requirements. Id. He then informed SBSI that "[b]ased on SBSI's failure to submit redacted copies of its proposal in accordance with the terms of the solicitation," he found its proposal unacceptable. Id. at 1011. He also listed several representative places in the proposal where SBSI had failed to comply with the redaction requirement, and noted that the list

was "not necessarily exhaustive." Id. Because its proposal was unacceptable, the CO informed SBSI that it "w[ould] not be considered for award." Id. at 1010.

### III.    GAO Protest

On December 10, 2014, SBSI filed a protest with the Government Accountability Office (GAO). Id. Tab 3a at 24. It contended that the CO improperly rejected its proposal on the ground that the non-redactions constituted "a minor informality that should have been waived by the Contracting Officer (as it had been in previous DIA competitions under a predecessor contract)." Id. Alternatively, it argued that "if this was a technical evaluation resulting in an 'unacceptable' rating, it was an improper evaluation based on undisclosed criteria." Id.

GAO denied the protest. Id. Tab 8 at 1019. Addressing only SBSI's first argument, GAO "disagree[d] with SBSI's characterization of its failure to redact information as . . . a 'minor informality.'" Id. at 1021. Rather, the redaction requirement was "an explicit, mandatory requirement." Id. at 1022. Accordingly, GAO found that the agency did not "act[] unlawfully when it refused to further consider [SBSI's] offer[] for award." Id.

### IV.    SBSI's Attempt to Appeal GAO's Decision and This Action

On March 25, 2015, SBSI noted an appeal of GAO's decision to the Court of Appeals for the Federal Circuit. See Pet. for Review, Strategic Bus. Sols., Inc. v. Def. Intelligence Agency, No. 2015-6001 (Fed. Cir. Apr. 1, 2015), ECF No. 1. On November 20, 2015, after resolving various preliminary procedural matters, the Federal Circuit dismissed the appeal for lack of subject matter jurisdiction, observing that GAO's non-binding bid protest decisions "serve as recommendations and are not subject to review in any court." See Order at 2–3, Strategic Bus. Sols., Inc., No 15-6001 (Fed. Cir. Nov. 20, 2015), ECF No. 26. The Court of Appeals then ordered the appeal transferred to the Court of Federal Claims, reasoning that the Court of Federal Claims "m[ight] have jurisdiction to review the DIA's rejection of SBSI's proposal, although not the GAO's review of that decision." Id. at 3.

This Court received the transferred record from the Court of Appeals on January 14, 2016. See ECF No. 1 (minute entry). SBSI took no immediate action in the wake of the transfer. Accordingly, on March 1, 2016, the Court ordered SBSI to show cause why the Court should not dismiss the case under RCFC 41(b). ECF No. 4.

After responding to the Court's order, ECF No. 7, SBSI filed a transfer complaint on March 21, 2016. ECF No. 10. In the transfer complaint, SBSI alleged that beginning in 2008, it had successfully performed several task orders under SIFM I. Transfer Compl. ¶¶ 12–13. It then acknowledged that it "did not redact references to SIFM I in [their] entirety" in the proposal at issue. Id. ¶ 15. According to SBSI, its failure to redact these references was deliberate. Particularly, it alleges, performance under SIFM I "was SBSI's only directly relevant IDIQ contract in Financial Management." Id. Further, that

4

performance "reveal[ed] that SBSI successfully competed for SIFM against [several] very large companies." Id.

SBSI then asserted several claims in connection with DIA's decision to exclude its proposal from consideration for award. First, it contended that its failure to redact did not amount to a "material failure" to comply with the RFP's terms. Id. ¶ 30(a). It also alleged that DIA's decision violated FAR 14.405 and FAR 15.304. Id. ¶ 30(b)–(c). Finally, it claimed that the redaction requirement violated the Competition in Contracting Act (CICA), 10 U.S.C. § 2304 & 41 U.S.C. § 3301, because the requirement "adversely impacted SBSI as it was the only small business/prime that had SIFM I IDIQ experience." Id. ¶ 30(d). As relief, it requested that the Court "[f]ind in favor of SBSI's claims as stated" and "[r]equire DIA to reinstate SBSI into the procurement process for SIFM II and proceed to the technical, cost, and past performance evaluation." Id. at 9.

After filing the administrative record, the government filed a motion for judgment on that record on May 24, 2016. ECF No. 17. SBSI filed an opposition to the government's motion on June 24, 2016, attaching a brief it filed before GAO that it believed should have been included in the administrative record. ECF No. 19. The Court stated that, assuming SBSI did not object, it would treat SBSI's opposition as a cross-motion for judgment on the administrative record. ECF No. 20. It also granted SBSI's request to have its GAO brief included in the administrative record. Id. SBSI did not note any objection to having its opposition treated as a cross-motion. See Docket. The government then filed a response to SBSI's cross-motion and a reply in support of its motion on August 5, 2016. ECF No. 23. SBSI filed a reply in support of its cross-motion on August 19, 2016. ECF No. 24. Oral argument was held on the cross motions on November 22, 2016.

## DISCUSSION

### I.   Jurisdiction

The Court of Federal Claims' bid protest jurisdiction is defined by 28 U.S.C. § 1491(b)(1). That statute grants the Court jurisdiction to "render judgment on an action by an interested party objecting to . . . a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." Id. As the Federal Circuit has observed, "[o]n its face, the statute grants jurisdiction over objections to a solicitation, objections to a proposed award, objections to an award, and objections related to a statutory or regulatory violation so long as these objections are in connection with a procurement or proposed procurement." Sys. Application & Techs., Inc. v. United States, 691 F.3d 1374, 1380–81 (2012).

As indicated by the statute, a plaintiff must be an "interested party" to have standing to invoke the Court's bid protest jurisdiction. CGI Fed. Inc. v. United States, 779 F.3d 1346, 1348 (Fed. Cir. 2015); Myers Investigative & Sec. Servs., Inc. v. United States, 275 F.3d 1366, 1369–70 (Fed. Cir. 2002). According to the Federal Circuit, an "interested party" under 28 U.S.C. § 1491(b)(1) is "an actual or prospective bidder . . . whose direct economic interest would be affected by the award of the contract." CGI

Fed., 779 F.3d at 1348 (quoting Am. Fed'n of Gov't Emps, AFL-CIO v. United States, 258 F.3d 1294, 1299 (Fed. Cir. 2001); see also Info. Tech. & Applications Corp. v. United States, 316 F.3d 1312, 1319 (Fed. Cir. 2003). An offeror has a direct economic interest if the alleged errors in the procurement caused it to suffer a competitive injury or prejudice. See Myers Investigative & Sec. Servs., Inc., 275 F.3d at 1370 (holding that "prejudice (or injury) is a necessary element of standing").

In a post-proposal, pre-evaluation protest (like this one), an offeror meets this standard if it can show that it had a "substantial chance" of receiving the award but for the alleged errors in the procurement. Orion Tech., Inc. v. United States, 704 F.3d 1344, 1348–49 (Fed. Cir. 2013). Thus, the protester must establish that absent the alleged errors, it "could have likely competed for the contract." Id. at 1349. Here, SBSI alleges that its proposal conformed to all of the RFP's requirements except the redaction requirement, and the government does not appear to contest that SBSI could have likely competed for the contract if its proposal had not been excluded for violating the redaction requirement. Thus, SBSI has standing to bring this protest, and the Court therefore has jurisdiction.

**II.     The Parties' Cross-Motions for Judgment on the Administrative Record**

   **A.     Standard for Granting Judgment on the Administrative Record**

Pursuant to Rules of the Court of Federal Claims (RCFC) 52.1, the court reviews an agency's procurement decision based on the administrative record. See Bannum, Inc. v. United States, 404 F.3d 1346, 1354 (Fed. Cir. 2005). The court makes "factual findings under RCFC [52.1] from the record evidence as if it were conducting a trial on the record." Id. at 1357. Thus, "resolution of a motion respecting the administrative record is akin to an expedited trial on the paper record, and the [c]ourt must make fact findings where necessary." Baird v. United States, 77 Fed. Cl. 114, 116 (2007). The court's inquiry is "whether, given all the disputed and undisputed facts, a party has met its burden of proof based on the evidence in the record." A&D Fire Prot., Inc. v. United States, 72 Fed. Cl. 126, 131 (2006). Unlike a summary judgment proceeding, genuine issues of material fact will not foreclose judgment on the administrative record. Bannum, Inc., 404 F.3d at 1356.

   **B.     Standard of Review in Bid Protest Cases**

The court reviews challenges to a procurement decision under the same standards used to evaluate an agency action under the Administrative Procedure Act, 5 U.S.C. § 706. See 28 U.S.C. § 1491(b)(4) (stating that "[i]n any action under this subsection, the courts shall review the agency's decision pursuant to the standards set forth in section 706 of title 5"). Thus, to successfully challenge an agency's procurement decision, a plaintiff must show that the decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); see also Bannum, Inc., 404 F.3d at 1351. This "highly deferential" standard "requires a reviewing court to sustain an agency action evincing rational reasoning and consideration of relevant factors."

6

Advanced Data Concepts, Inc. v. United States, 216 F.3d 1054, 1058 (Fed. Cir. 2000) (citing Bowman Transp., Inc. v. Ark.-Best Freight Sys., Inc., 419 U.S. 281, 285 (1974)).

In a bid protest action, the protester "bears a heavy burden" in attempting to show that the agency's decision lacked a rational basis, and the court's function is limited to "determin[ing] whether 'the . . . agency provided a coherent and reasonable explanation of its exercise of discretion.'" Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324, 1332–33, 1338 (Fed. Cir. 2001) (quoting Latecoere Int'l, Inc. v. U.S. Dep't of Navy, 19 F.3d 1342, 1356 (11th Cir. 1994)). Thus, to prevail, the agency need only articulate a "rational connection between the facts found and the choice made," and the court will "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983) (quotations omitted).

C. **DIA's Decision to Reject SBSI's Proposal**

It is well established that, in negotiated procurements like this one, an agency's decision to exclude an incomplete or non-conforming proposal from consideration is "entitled to a high degree of deference." See Orion Tech., 704 F.3d at 1351 (holding that the Army reasonably excluded proposal from competition where it failed to include required pricing information); see also Equa Sols., Inc. v. United States, 120 Fed. Cl. 371, 381 (2015) (decision to exclude proposal upheld because it had a rational basis); G4S Tech. CW LLC v. United States, 109 Fed. Cl. 708, 724 (2013) (same); USfalcon, Inc. v. United States, 92 Fed. Cl. 436, 464–65 (2010) (same). Further, in accordance with FAR 52.212-2(a), the RFP in this case specifically informed offerors that only those proposals that conformed to the solicitation would be eligible for an award. See AR Tab 4a at 532 (informing offerors that the government "intend[ed] to make a single or multiple award(s) . . . to the responsible offeror(s) whose offer(s), conforming to the solicitation, will be the best value to the Government" (emphasis added) (quotation omitted)); see also FAR 52.212-2(a) (indicating government will award contract to offeror whose proposal conforms to the solicitation and is the most advantageous to the government). And, finally, the solicitation also incorporated FAR 52.212-1(b)(11) stating that "[o]ffers that fail to furnish required representations or information, or [that] reject the terms and conditions of the solicitation may be excluded from consideration." See AR Tab 4a at 513–14.

Here, the record confirms and it is not disputed that SBSI's proposal did not conform to the instructions in the RFP. Thus, the RFP included an instruction that required offerors to submit copies of their technical and past performance volumes in redacted form. Notwithstanding that requirement, SBSI acknowledges that it deliberately failed to redact references to the fact that it had been a contractor on SIFM I, and the agency correctly found multiple other failures to redact the proposal, totaling over 100 instances of non-compliance. The Court thus has no basis for upsetting the agency's determination that SBSI's proposal should be excluded from consideration because it failed to comply with the redaction requirement. See LS3 Inc., B-401948.11, 2010 WL 2862041 (Comp. Gen. July 21, 2010) (finding that agency properly rejected proposal that contained identifying information where solicitation explicitly required such information

to be redacted); SNAP, Inc., B-402746, 2010 WL 2804498 (Comp. Gen. July 16, 2010) (same).[2]

Although not entirely clear, the primary bases for SBSI's bid protest in this case (at least as expressed in its briefs) appear to be that its failure to redact its proposal was not a "material" failure, that the agency should have treated the defect as a "minor informality or irregularity" within the meaning of FAR 14.405, and that, as such, the agency was required either to waive the defect or to permit SBSI to cure it.[3] See Pl.'s Opp'n to Mot. for J. on the Admin. R. (Pl's Opp'n) at 7–8, 18–20, ECF No. 19. These arguments lack merit.

First, even assuming that SBSI's failure to comply with the redaction requirement could be considered a minor informality or irregularity, the agency was not required to give SBSI an opportunity to cure its error; nor was it required to waive the error. The mandatory opportunity to cure/waiver requirements of FAR 14.405 apply where a procurement is accomplished by means of sealed bidding. See FAR 14.101. This procurement, however, was governed by FAR Part 12 (Acquisition of Commercial Items) and FAR Part 15 (Contracting by Negotiation). Both Parts provide that a waiver of minor errors is discretionary, not mandatory.

Thus, FAR 12.301(b)(1) requires that contracts for the acquisition of commercial items include the clause set forth at FAR 52.212-1(g), which states that the agency "may . . . waive informalities and minor irregularities in offers received." (emphasis added); see AR Tab 4a at 513–14 (incorporating FAR 52.212-1(g)). Similarly, FAR 15.306(a)(2) states that "[i]f award will be made without conducting discussions, offerors may be

---

[2] GAO decisions are "not binding authority," but may be "instructive in the area of bid protests." Centech Grp., Inc. v. United States, 554 F.3d 1029, 1038 n.4 (Fed. Cir. 2009); see also Thompson v. Cherokee Nation of Okla., 334 F.3d 1075, 1084 (Fed. Cir. 2003) (decisions of the GAO are treated as expert opinions, which the court should "prudently consider" (quoting Delta Data Sys. Corp. v. Webster, 744 F.2d 197, 201 (D.C. Cir. 1984))), aff'd in part, rev'd in part sub nom. Cherokee Nation of Okla. v. Leavitt, 543 U.S. 631 (2005).

[3] FAR 14.405 states, in pertinent part, as follows:

> A minor informality or irregularity is one that is merely a matter of form and not of substance. It also pertains to some immaterial defect in a bid or variation of a bid from the exact requirements of the invitation that can be corrected or waived without being prejudicial to other bidders. The defect or variation is immaterial when the effect on price, quantity, quality, or delivery is negligible when contrasted with the total cost or scope of the supplies or services being acquired. The contracting officer either shall give the bidder an opportunity to cure any deficiency resulting from a minor informality or irregularity in a bid or waive the deficiency, whichever is to the advantage of the Government.

given the opportunity . . . to resolve minor or clerical errors" (emphasis added)). In short, Part 15 does not "requir[e] contracting officers to clarify minor or clerical errors in negotiated procurements"; permitting such clarifications is discretionary, "unlike the mandatory nature of the comparable [rules] in Part 14 for sealed bidding." BCPeabody Constr. Servs., Inc. v. United States, 112 Fed. Cl. 502, 510 (2013); see also Bus. Integra, Inc. v. United States, 116 Fed. Cl. 328, 334 (2014) (observing that the "regulatory regime" applicable to sealed bidding "differs significantly" from the regime applicable to procurement by negotiation); ST Net, Inc. v. United States, 112 Fed. Cl. 99, 111 (2013) (observing that "[t]his court has repeatedly recognized the permissive nature of [Section 15.306] in the context of negotiated procurements").

In any event, SBSI's failure to redact its proposal in over 100 places does not involve a "minor informality or irregularity," i.e., "one that is merely a matter of form and not of substance," and that "pertains to some immaterial defect in a bid or variation of a bid from the exact requirements of the invitation that can be corrected or waived without being prejudicial to other bidders." FAR 14.405. For purposes of Part 14, such errors might include, for example, providing the wrong number of copies of the bid, listing the wrong number of employees, or failing to sign the bid itself where the submission includes other material indicating the bidder's intent to be bound. See id.

The redaction requirement, however, is not a formalistic one comparable to the types of requirements violated in the examples set forth at FAR 14.405. It served a substantive purpose—promoting the unbiased evaluation of all offerors' proposals. Moreover, the information revealed in an unredacted proposal could affect an offeror's chances of receiving a contract award. In fact, to at least some extent, SBSI's failure to redact was deliberate and designed to give it an advantage (or at least to remove some perceived disadvantage).[4] It would be inappropriate to apply an exception designed to relieve an offeror of the consequences of an inadvertent minor mistake where, as here, it has acted in deliberate defiance of the solicitation's requirements and for purposes of securing an advantage.

Similarly, SBSI's failure to redact could not have been corrected or waived without prejudicing other offerors. For if the violation were waived, the agency's technical evaluators would have had access to critical information about SBSI's experience and proposed staff that the other offerors who complied with the instructions were not able to present. If, on the other hand, SBSI were allowed to cure the defect (by submitting a compliant proposal), the agency would have been required to convene an

---

[4] Although SBSI claims that many of its over 100 redaction failures were "accidental," it acknowledges that the references to its experience under the predecessor contract were intentionally left unredacted. See Pl.'s Opp'n at 4 (stating that "prior experience on SIFM I aside, the omissions were accidental"); see also AR Tab 3a at 160–61 (declaration of SBSI's president and CEO stating that "SBSI left some of th[e] information unredacted" noting as an example that "SBSI's work under the predecessor SIFM contract is a major part of SBSI's experience, and SBSI could not redact this in a manner that would both maintain its anonymity and demonstrate its technical competence").

9

entirely new SSEB or take some other extraordinary action to ensure that those reviewing and evaluating SBSI's proposal were not tainted by SBSI's submission of the unredacted proposal.

In short, the failure to redact did not involve a minor informality or irregularity. And the agency clearly acted within its discretion when it rejected SBSI's offer based on its non-compliance with the redaction requirement.

SBSI's remaining claims of error also lack merit. Thus, SBSI contends that because the technical evaluation panel discovered the redaction errors while evaluating SBSI's proposal, the exclusion must have been based on an unstated evaluation criterion, which is unlawful under FAR 15.304. See Pl.'s Opp'n at 9–10. But while SBSI's failure to redact was not discovered until the evaluation of the proposals began, the exclusion of the proposal was not a result of the application of some unstated evaluation criterion—it was a result of SBSI's failure to follow the instructions in the solicitation regarding redaction. And SBSI offers no support whatsoever for its further argument that—once the evaluation process began—the agency was required to conduct an evaluation of its proposal pursuant to the factors set forth in section M of the RFP, notwithstanding that SBSI's proposal was not redacted as the RFP required.

Finally, SBSI claims that the redaction requirement itself was unfair and improper at least insofar as it required SBSI to redact reference to its status as a contractor for SIFM I. See Transfer Compl. ¶ 30(d); see also Pl.'s Opp'n at 28–29. Specifically, in its complaint, SBSI alleged that "the last instruction in the redacting requirements violated CICA in that it required proposals [to] redact any and all references to SIFM I," which had the effect of "adversely impact[ing] SBSI as it was the only small business/prime that had SIFM I IDIQ experience." Transfer Compl. ¶ 30(d). Because SBSI did not raise its objection to the solicitation's terms until after the award was made, however, the objection is waived. Blue & Gold Fleet, L.P. v. United States, 492 F.3d 1308, 1315 (Fed. Cir. 2007); see also COMINT Sys. Corp. v. United States, 700 F.3d 1377, 1381–82 (Fed. Cir. 2012).

## CONCLUSION

For the reasons discussed above, the government's motion for judgment on the administrative record is **GRANTED**, and SBSI's cross-motion for judgment on the administrative record is **DENIED**. The Clerk is directed to enter judgment accordingly. Each side shall bear its own costs.

**IT IS SO ORDERED.**

s/ Elaine D. Kaplan
ELAINE D. KAPLAN
Judge